UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DANE FINLEY,

                                              Plaintiff,

        vs.

                                                                      9:06-CV-1524
SGT. PERRY, et al.,                                                   (FJS/ATB)

                                              Defendants.

_____

DANE FINLEY, Plaintiff Pro Se
MEGAN M. BROWN, Asst. Attorney General, for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

        This matter was referred by Senior U.S. District Judge Frederick J. Scullin, Jr.,

for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rules

N.D.N.Y. 72.3(c).  The case was transferred to me on January 4, 2010, following the

retirement of U.S. Magistrate Judge Gustave J. Di Bianco.  (Dkt. No. 113).

        While an inmate in the custody of the Department of Correctional Services

("DOCS"), plaintiff filed his complaint, pursuant to 42 U.S.C. § 1983, regarding

incidents that occurred during his incarceration at  at Upstate Correctional Facility

("Upstate").[1]  Liberally construed, plaintiff's amended complaint[2] (Dkt. No. 98) makes

_____

        [1] Plaintiff has since been released from custody.  (Dkt. No. 96).

        [2] Plaintiff was granted leave to file an amended complaint on March 30, 2009.  (Dkt. No. 97).

several claims against ten defendants[3] regarding the events of December 19, 2005. He alleges that Correction Officers M. Gokey, G. Ellsworth, and B. Clark used excessive force against him during the morning of December 19th, in violation of his Eighth Amendment and Due Process rights. (Amended Complaint ("AC") ¶ 6A). Plaintiff claims that Nurse N. Ploof was deliberately indifferent to his serious medical needs by failing to give him treatment following the alleged assault, and by leaving him handcuffed and back-chained. (AC ¶ 6B). He alleges that Sgt. Perry and Correction Officers B. Gulc,[4] D. Coorigeux, W. Dock, and Premo further violated his Eighth Amendment and Due Process rights by assaulting and "torturing" him on the afternoon of December 19, 2005 and/or by failing to intervene to stop the application of excessive force by others among that group. (AC ¶ 6C). He further claims that Social Worker Elaine Amberman also failed to intervene to stop the alleged assault/torture that afternoon. (AC ¶ 6D). Finally, plaintiff alleges that defendants Ploof, Perry, Gulc/Gale, Coorigeux, Dock/Jock, Premo, and Amberman violated his

---

[3] Plaintiff's Brief in Opposition to Defendants' Summary Judgment Motion (Dkt. No. 115-2 at 1-2), states that he is seeking damages against each defendant, "in their individual and official capacity." It is well-settled that the state itself cannot be sued under section 1983. *Komlosi v. New York State OMRDD*, 64 F.3d 810, 815 (2d Cir. 1995) (citing *Will v. Michigan Department of Police*, 491 U.S. 58, 71 (1989)). An action against state officers in their official capacities is tantamount to an action against the state. *Yorktown Medical Laboratory, Inc. v. Perales*, 948 F.2d 84, 87 & n.1 (2d Cir. 1991). To the extent that the defendants are being sued in their official capacity for money damages, that cause of action should be dismissed under the Eleventh Amendment. *Huang v. Johnson*, 251 F.3d 65, 69-70 (2d Cir. 2001); *Posr v. Court Officer Shield #207*, 180 F.3d 409, 414 (2d Cir. 1999).

[4] This defendant's last name is actually "Gale." Defendant "Dock's" last names is actually "Jock."

2

right to due process by denying him lunch and dinner on December 19th.  (AC ¶¶ 6B-6D).  Plaintiff seeks substantial monetary damages from each defendant.  (AC at p. 6).

Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 110).  Plaintiff has responded in opposition to the motion. (Dkt. No. 115).  For the following reasons, this court recommends that defendants' motion be granted in part and denied in part.  I particular, this court recommends that summary judgment be denied with respect to the Eighth Amendment excessive force and failure-to-intervene claims against the correction officers, with respect to both alleged incidents on December 19, 2005.  Dismissal is recommended with respect to the deliberate indifference claim against defendant Ploof, the failure to intervene claim against defendant Amberman, and the due process claim against all defendants relating to the alleged failure to provide two meals to plaintiff.

## DISCUSSION

I.   <u>Facts</u>

A.   **The First "Assault" on the Morning of 12/19/2005**

On the morning of December 19, 2005 plaintiff was admitted to the Upstate infirmary on a special watch early in the morning because he threatened self-harm as a result of not receiving ointment for his chapped lips.  (Amberman Decl., Dkt. No. 110-11, ¶ 8; 10/23/2007 Deposition of Plaintiff, Dkt. No. 110-5 ("Dep."), at 54-57). Plaintiff eventually agreed to return to his cell, and Social Worker Amberman

3

determined he was appropriate for Special Housing Unit ("SHU") placement. (Amberman Decl. ¶ 9; Dep. at 57-58).  Prior to returning to his cell, the inmate was brought to the Body Orifice Security Scanner ("BOSS") chair by three Correction Officers to determine if he had any contraband upon him. (Gokey Decl., Dkt. No. 110-23, ¶¶ 5-6; Ellsworth Decl., Dkt. No. 110-18, ¶¶ 5-6; Clark Decl., Dkt. No. 110-26, ¶¶ 5-6 ).

According to defendants Gokey, Ellsworth, and Clark, plaintiff was instructed to lift his handcuffed hands out of his lap, so that the metal contained in the mechanical restraints would not set off the alarm on the BOSS chair.  The inmate ignored the direct orders of security staff and lunged at the officers.  (Gokey Decl. ¶¶ 7-9; Ellsworth Decl. ¶¶ 7-11; Clark Decl. ¶¶ 6-8).  Officers Gokey, Ellsworth, and Clark claim they used the minimum amount of force necessary to gain control of the inmate, by bringing him to the floor and restraining him.  (Gokey Decl. ¶¶ 10-11, 13-19; Ellsworth Decl. ¶¶ 11-16, 19-20; Clark Decl. ¶¶ 8-9, 11-14, 22-25).  When a sergeant appeared with back-up, the officers were relieved, and plaintiff was brought to the infirmary.  A "Use of Force" report with the required photographs, statements, and medical examination was completed.[5]  (Gokey Decl. ¶¶ 11-12 & Ex. A; Ellsworth Decl. ¶¶ 13, 17 & Ex. A; Clark Decl. ¶ 10; Brown Decl., Exs. B & C, Dkt. Nos. 110-6 & 110-7).  Defendant Ellsworth issued an Inmate Misbehavior Report (Ellsworth Decl. ¶ 18 & Ex. B), which plaintiff denies ever receiving.  (Pltf. Decl. at 3).

---

[5] Plaintiff claims that the Use of Force report was fabricated in response to his grievance relating to the incidents of December 19, 2005.  (Pltf. Decl. at 4, Dkt. No. 115).

The plaintiff claims that he complied with the directions of the Correction Officers with respect to the BOSS chair, but was attacked by defendants Gokey, Ellsworth, and Clark, without provocation.  (Dep. at 21-22, 23).  He asserts that one of the officers pushed him to the floor, another punched him in the face, while the third stepped and stomped on plaintiff's back, all while he was restrained in handcuffs. (Dep. at 28-30, 33-36).  According to plaintiff, the three officers then proceeded to kick and punch him repeatedly over his entire body for approximately five minutes, until a sergeant appeared and plaintiff was allowed up from the floor.  (Dep. at 37-41).[6]  During the incident, plaintiff alleges, one or more of the defendants yelled threatening and racially-abusive comments,[7] which the officers deny.  (Gokey Decl. ¶¶ 13-14; Clark Decl. ¶ 13).  As a result of the "assault," plaintiff claims that he suffered a "busted" and bleeding lip, swollen "knots" on his face, and a bruised back that was so painful he could not walk.  (Dep. at 41-44).

Plaintiff was examined by Nurse Ploof approximately 15 minutes after the BOSS chair incident.  She noted plaintiff's subjective complaints of pain, but observed no injuries to plaintiff (including his back), and no bleeding.  (Ploof Decl., Dkt. No. 110-9, ¶¶ 7-8, 10; Brown Decl., Exs. B & C).  The photocopies of the photographs of plaintiff taken after the BOSS Chair incident are inconsistent with

---

[6] When the sergeant arrived, plaintiff alleges that one guard was twisting his ankle, another had his knee on plaintiff's hand, and the third had a knee on plaintiff's back and was pushing his face into the floor.  (Dep. at 41, 44-46).

[7] Plaintiff alleges that a guard said "ain't no cameras in here, nigger" (Dep. at 35-36) and "You're lucky the CO you had an argument with ain't here, then you would be a dead nigger" (Dep. at 48, 51).

plaintiff's claims that his lip left approximately four quarter-sized blood drops on the sheets (Dep. at 79-80), but are otherwise not conclusive with respect to the extent of the alleged swelling on his face or bruises on his back.  (Brown Decl. Ex. C, Dkt. No. 110-7).  Nurse Ploof kept plaintiff in the infirmary for observation and ordered x-rays, because he complained of not being able to use his legs.  (Ploof Decl. ¶ 10; Brown Decl., Ex. D, Dkt. No. 110-8 at 2).

### B.   The "Assault/Torture" Incident on the Afternoon of 12/19/2005

Plaintiff stayed in an observation room (# 12) in the infirmary for several hours, during which time he periodically yelled to Social Worker Amberman for attention and eventually began to threaten self harm again.  (Amberman Decl. ¶ 10; Dep. at 82-83, 87-91, 96-97).  According to defendants Gale, Jock, Premo, and Amberman,[8] plaintiff was thereafter transferred, without incident, to the special watch observation room (# 10) in the infirmary at approximately 3:05 p.m.  The correction officers handcuffed plaintiff during the transfer, but denied that the restraints were applied too tightly to plaintiff or that any inappropriate force was applied to him.  (Gale Decl., Dkt. No. 110-14, ¶¶ 4-11 & Ex. A; Premo Decl., Dkt. No. 110-16, ¶¶ 6-8, 10; Jock Decl., Dkt. No. 110-21, ¶¶ 7-10 & Ex. A; Amberman Decl. ¶¶ 10, 14-16 & Ex. B). Officer Premo was in charge of videotaping the transfer, although the tape was apparently re-used, and the video was not available to plaintiff in discovery.  (Premo Decl. ¶ 7; Defendants' Supplemental Response to Discovery Requests at 1-2, Dkt. No.

---

[8] Declarations were not submitted for defendants Perry and Corrigeux, who were apparently involved in this incident.

6

115-9).

Plaintiff claims that, after he threatened to kill himself, the Social Worker left the area and, shortly thereafter, a group of correction officers came to his room. Sgt. Perry instructed plaintiff to put his back against the door and put his hands behind him and through a slot in the door, so the officers could handcuff him from outside of the room.[9] (Dep. at 97-98). Plaintiff claims a correction officer with the nickname "Bubba" placed handcuffs on him, tightened them as much as possible, and started pulling on the restraints, making "faces like he was really trying to hurt me." (Dep. at 98). Plaintiff started "yelling and screaming" because he was in pain, such that he never felt in his life. Officer Premo allegedly put down the video camera and walked away. (*Id*.). Officer "Bubba" let up the pressure on the handcuffs momentarily and then passed the cuffs to another officer[10] who resumed pulling hard, causing more pain to plaintiff. (Dep. at 98-99). Plaintiff felt like his hand was going to be ripped off and continued to yell. The handcuffs were passed once more to Officer "Bubba" and the "handcuff torture" (Dep. at 107) continued, for a total of about a minute or a minute and a half. (Dep. at 98-100). During the incident, a vein popped out of plaintiff's right pinky, and he experienced pain that was "extraterrestrial." (Dep. at 101-103).

X-rays of plaintiff's back on December 20, 2005 revealed "mild degenerative

---

[9] At some point earlier in the afternoon, a sergeant came to plaintiff's locked room and removed the restraints that had been placed on him in the morning. (Dep. at 87).

[10] Plaintiff identified the group of correction officers who participated in his transfer from documents generated in response to his grievance. (Dep. at 92-93). He cannot specifically identify who did what during this incident.

disc disease" with no fractures.   "No fracture, dislocation or adjacent soft tissue abnormality" were shown by an x-ray of his right pinky finger on the same day. (Brown Decl., Ex. D, Dkt. No. 110-8 at 3-5; Dkt. No. 115-11 at 64).   Ax x-ray of plaintiff's right wrist, on January 12, 2006, revealed a "likely" "subacute fracture, which is nearly healed," but no acute fracture or dislocation.  (Dkt. No. 115-12 at 15). Plaintiff submitted medical records that were much more extensive than those filed in connection with defendants' summary judgment motion.  (Dkt. No. 115-11, 115-12). The records filed by plaintiff document that he received medical treatment and physical therapy, mostly for back-related problems, and mental health evaluations, all of which plaintiff associates with the incidents of December 19, 2005.  (*See, e.g.*, Dkt. No. 115-11 at 19, 21, 26, 66-83; Dkt. No. 115-12 at 6, 15).

### C.    Failure to Serve Two Meals

Defendants Jock and Clark were assigned to the infirmary on December 19, 2005 and, in that capacity, would have been aware of or involved with delivering meals to inmates assigned there.  (Jock Decl. ¶ 3; Clark Decl. ¶¶ 3, 19).[11]  Officer Clark made an entry on the prisoner log for the infirmary on December 19th, noting that Plaintiff refused his breakfast that morning.  There was no notation with respect to whether plaintiff received lunch or dinner that day, and Officer Clark states that he would have made entries in the log if plaintiff had refused any other meals.  (Clark

---

[11] Plaintiff did not list Officer Clark in his amended complaint as one of the defendants who denied him meals.  (AC ¶ 6).  The other defendants who were accused of denying plaintiffs meals and who filed declarations in connection with the summary judgment motion state that they were not responsible for or involved in serving or denying plaintiff meals on December 19th.

Decl. ¶¶ 17-18 & Ex. B).  Officer Jock averred that he always offered the inmates their
meals when he worked at the infirmary.  (Jock Decl. ¶ 12).

## II.   <u>Summary Judgment–Legal Standards</u>

Summary judgment may be granted when the moving party carries its burden of
showing the absence of a genuine issue of material fact.  FED. R. CIV. P. 56; *Thompson
v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted).  "All reasonable
inferences and any ambiguities are drawn in favor of the nonmoving party." *Id.*
However, when the moving party has met its burden, the nonmoving party must do
more than "simply show that there is some metaphysical doubt as to the material
facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,
586 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

In meeting its burden, the party moving for summary judgment bears the initial
responsibility of informing the court of the basis for the motion and identifying the
portions of "'the pleadings, depositions, answers to interrogatories, and admissions on
file, together with the affidavits, if any,' which it believes demonstrate the absence of
a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
Where the non-movant bears the burden of proof at trial, the moving party may show
that he is entitled to summary judgment by either (1) pointing to evidence that negates
the non-movant's claims or (2) identifying those portions of the non-movant's
evidence that demonstrate the absence of a genuine issue of material fact. *Salahuddin
v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006) (citing *Celotex Corp.*, 477 U.S. at 23).
The second method requires the identification of evidentiary insufficiency, not merely

a denial of the opponent's pleadings.  *Id*.

If the moving party satisfies its burden, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.  *Id*.  A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant.  *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."  *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996);  *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996).  Additionally, while a court "is not required to consider what the parties fail to point out," the court "may in its discretion opt to conduct an assiduous review of the record" even where a party fails to respond to the moving party's statement of material facts.  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations and internal quotation marks omitted).

## III.   **Excessive Force/Failure to Intervene**

### A.   **Legal Standards**

#### 1.   **Eighth Amendment–Excessive Force**

Inmates enjoy Eighth Amendment protection against the use of excessive

force,[12] and may recover damages under 42 U.S.C. § 1983 for a violation of those rights. *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992). The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000). To sustain a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements. *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir.1999).

In order to satisfy the objective element of the constitutional standard for excessive force, the defendants' conduct must be "'inconsistent with the contemporary standards of decency.'" *Whitely v. Albers*, 475 U.S. at 327 (citation omitted); *Hudson*, 503 U.S. at 9. However, "the malicious use of force to cause harm constitute[s][an] Eighth Amendment violation per se" regardless of the seriousness of the injuries. *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (citations omitted). " 'Not every push or shove, even if it may later seem

---

[12] Plaintiff invoked both the Fourteenth Amendment's Due Process Clause and the Eighth Amendment in challenging the alleged use of excessive force against him by the defendants. However, "the Eighth Amendment . . . serves as the primary source of substantive protection to convicted prisoners in cases such as this one, where the deliberate use of force is challenged as excessive and unjustified." *Whitely v. Albers*, 475 U.S. 312, 327 (1986). The Eighth Amendment is made applicable to the states through the Fourteenth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 344-45 (1981). Accordingly, this court will assess plaintiff's excessive force claims using Eighth Amendment standards.

unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" *Sims*, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Id*. at 21 (citation omitted).  The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id*.  (quoting *Hudson*, 503 U.S. at 7).  In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider:  the extent of the injury and the mental state of the defendant; the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003).

## 2.   Failure to Intervene

A correction officer who is present while an assault upon an inmate occurs may bear responsibility for any resulting constitutional deprivation, even if he did not directly participate.  *See, e.g., Cicio v. Graham,* No. 9:08-CV-534 (NAM/DEP), 2010 WL 980272, at *13 (N.D.N.Y. March 15, 2010); *Tafari v. McCarthy*, No. 9:07-CV-654 (DNH/GHL), 2010 WL 2044705, at*8  (N.D.N.Y. May 24, 2010).[13]  A law

---

[13] *See also Fischl v. Armitage,* 128 F.3d 50, 57 (2d Cir.1997) (reversing grant of summary judgment for defendant based on evidence that defendant was in the vicinity of an assault on plaintiff and failed to intervene)*; Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir.1994).

enforcement official has an affirmative duty to intervene on behalf of an individual whose constitutional rights are being violated by other officers in his or her presence. *Id*.[14]  In order to establish liability under this theory, a plaintiff must prove that the defendant in question (1) possessed actual knowledge of the use by another correction officer of excessive force; (2) had a realistic opportunity to intervene and prevent the harm from occurring; and (3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force.  *Id.; Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citation omitted).  Assuming these standards are met, a "plaintiff need not establish who, among a group of officers, directly participated in the attack and who failed to intervene."  *Younger v. City of New York*, 480 F. Supp. 2d 723, 732 (S.D.N.Y. 2007) (quoting *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003)).

## B.    Application

The defendants argue that plaintiff has failed to provide sufficient details regarding the personal involvement of each defendant in the two alleged incidents of excessive force on December 19, 2005.  They assert further that, given that plaintiff sustained no apparent injuries, and considering the other contrary evidence presented in connection with the summary judgment motion, no rational juror could credit plaintiff's dramatic, but unsupported allegations about the "assault" and "torture."

---

[14] *See also Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir.2001) ("Failure to intercede results in [section 1983] liability where an officer observes excessive force being used or has reason to know that it will be.") (citations omitted).

13

Plaintiff has adequately alleged that the named correction officers, but not the defendant social worker, either participated in or were present for and failed to intervene in, the alleged uses of excessive force.  While plaintiff's Eighth Amendment claims are weak and the supporting evidence thin, he has established that there are genuine issues of material fact that should be resolved by a jury.

### 1.    The First "Assault"

Defendants Gokey, Ellsworth, and Clark admittedly used force to subdue plaintiff on the morning of December 19, 2005.  In his grievance (Dkt. No. 115-5), original complaint (Dkt. No. 1), and deposition, plaintiff consistently alleged details of an assault which, if believed, would amount to a "malicious use of force to cause harm" that constitutes a *per se* Eighth Amendment violation regardless of the seriousness of his injuries.  *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9).  As described by plaintiff, the incident involved more than an *de minimis* use of force, and the threatening and racist statements allegedly made by the defendants could indicate, not "a good-faith effort to maintain or restore discipline," but a malicious and wanton attempt to cause harm.[15]  *Sims*, 230 F.3d at 22; *Hudson*, 503 U.S. at 7. Although the plaintiff cannot identify, at least by name, which of the three defendants administered particular blows, he adequately describes the personal involvement of each officer who was admittedly involved in the incident.  (Dep. at 33-34).

---

[15] It should be noted that verbal abuse, whether threatening, vulgar, or racial in nature, does not, by itself,  rise to the level of a constitutional violation. See, e.g., *Purcell v. Coughlin* 790 F.2d 263, 265 (2d Cir. 1986); *Ramirez v. Holmes*, 921 F. Supp. 204, 210 (S.D.N.Y. 1996).

The three correction officers all vehemently deny using more than the minimum amount of force required to restrain the plaintiff, and the medical evidence does not corroborate plaintiff's claims of significant injuries.[16]  However, given that issues of credibility should not be resolved on a summary judgment motion, this court cannot conclude that no rational juror could find that the three named defendants violated plaintiff's Eighth Amendment rights on the morning of December 19, 2005.  *See, e.g., Griffin v. Crippen*, 193 F.3d 89, 90-92 (2d Cir. 1999) (although plaintiff could offer only his own testimony and evidence of a bruised shin and a swollen left knee in support of his excessive force claim, dismissal was inappropriate because there were genuine issues of material fact concerning whether correction officers, whom plaintiff admittedly assaulted, maliciously used force against him after he was subdued and handcuffed); *Sims v. Artuz*, 103 Fed. Appx. 434, 437 (2d Cir. 2004) (plaintiff's allegations that he was kicked and punched while being removed from his cell after causing a disruption, corroborated in part by documented minor injuries[17] were

---

[16] As discussed above, medical records indicate that plaintiff complained of, and in some cases received treatment for, pain in his wrist and back, as well as alleged stress in the months following December 19, 2005.  Defendants assert that plaintiff will be unable to establish that his subsequent medical problems, particularly his back problems, were caused by the alleged incidents of excessive force.  While that may well be the case, and plaintiff may have few, if any compensable injuries, that does not support dismissal on summary judgment.  *See, e.g., Reyes v. McGinnis*, 00-CV-6352, 2003 WL 23101781, at *6 (W.D.N.Y. Apr. 10, 2003) (whether an injury to inmates wrist was caused by trauma resulting from defendant's use of handcuffs was a factual issue for the jury); *Gibeau v. Nellis*, 18 F.3d 107, 110 (2d Cir. 1994) (while plaintiff may not have proved compensable injuries caused by the use of excessive force, he still could be entitled to a judgment under Section 1983 and an award of nominal damages at trial).

[17] The Second Circuit reversed the grant of summary judgment, which was based, in part, on the district judge's conclusion that the plaintiff  "would have suffered 'far greater injury than actually occurred' if his account [of the incident] were accurate."  *Id.*

15

sufficient to withstand a summary judgement motion); *Dallio v. Sanatamore*, 9:06-CV-1154 (GTS/DRH), 2010 WL 125774, at *9 (N.D.N.Y. Jan. 7, 2010) (because the court should not weigh the evidence or make credibility determinations, summary judgment would be denied where plaintiff alleged that he was repeatedly kicked and punched after he was subdued and restrained by correction officers, notwithstanding the relatively minor injuries the plaintiff suffered and the substantial contrary evidence proffered by the defendants); *Cicio v. Lamora*, 9:08-CV-431 (GLS/DEP), 2010 WL 1063875, at *7-8 (N.D.N.Y. Feb. 24, 2010) (denying summary judgment on plaintiff's claim that defendant correction officer hit inmate several times after he was subdued and helpless, despite "seemingly overwhelming" contradictory evidence, including the fact that plaintiff suffered only a minor bruise).

### 2.    "Assault/Torture" Involving Use of Handcuffs

The five correction officers named as defendants in connection with the alleged assault/torture incident on the afternoon of December 19, 2005 have not contested that they were involved in or present plaintiff's transfer from one room in the Upstate infirmary to another.[18]  Plaintiff alleges that two of these correction officers, who he cannot specifically identify, maliciously pulled on his fully-tightened handcuffs while his arms were extended behind his back through the slot in the observation room door, causing him extreme pain and injuries to his hands and wrists.  The other officers,

---

[18] As discussed further below, Social Worker Amberman denies any involvement in the physical transfer and persuasively asserts that she lacked the authority to intervene in the activities of the correction officers in securing and moving an inmate.

16

plaintiff claims, watched while he screamed in pain, and did nothing to intervene.

The officers and Social Worker Amberman all assert that plaintiff was transferred without incident and without the use of excessive force, involving handcuffs or otherwise. Subsequent medical examination and x-rays did not corroborate plaintiff's alleged injury to his right pinky and left wrist, although an x-ray of his right wrist a few weeks later revealed a likely, non-acute fracture.

A district court judge has summarized the case law in this circuit with respect to excessive force claims based on abusive handcuffing:

> Although handcuffs must be reasonably tight to be effective, . . . overly tight handcuffing can constitute excessive force. . . . "[I]n evaluating the reasonableness of handcuffing, a Court is to consider evidence that: 1) the handcuffs were unreasonably tight; 2) the defendants ignored the [plaintiff s] pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." *Esmont v. City of New York*, 371 F. Supp. 2d 202, 215 (E.D.N.Y.2005) (emphasis in original). . . . There is a consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort. . . .

*Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468-69 (S.D.N.Y. 2008) (citations omitted). Many of the relevant cases reviewed by this court have dismissed Eighth Amendment claims based on allegedly malicious use of handcuffs on prisoners or arrestees which result in no lasting injury.[19]

In this case, however, plaintiff's allegations, if believed, describe more malicious conduct that just the application of tight handcuffs. Moreover, the medical

---

[19] *See, e.g., id.* at 468; *Davidson v. Murray*, 371 F. Supp. 2d 361, 376 (W.D.N.Y. 2005); *Anderson v. Sullivan*, 702 F. Supp. 424, 427 (S.D.N.Y. 1988).

records indicating a non-acute fracture in his right wrist, provide some corroboration of his claim of a resulting injury. While plaintiff's claim of excessive force is very thin, this court finds that there are genuine and material issues of fact that require credibility assessments that cannot be made in the context of a summary judgment motion. *See, e.g.*, *Tafari v. McCarthy*, 2010 WL 2044705, at *26-27, 27-28 (denying summary judgment on an excessive force claim that correction officer pulled inmates handcuffed hands through the hatch in a cell door, causing plaintiff's face to slam into the steel door, breaking a tooth); *Reyes v. McGinnis*, 2003 WL 23101781, at *1, 6 (denying summary judgment motion on excessive force claim against correction officer who, *inter alia*, allegedly applied handcuffs too tightly, and lifted plaintiff from the floor by his handcuffs, causing nerve damage in his wrists and a possible ganglion cyst).[20]

    As noted above, the defendant cannot specifically identify which of the five correction officers admittedly present during this incident pulled on his handcuffs and which merely watched and failed to intervene. However, plaintiff is not required to prove who was actively abusing him and who was passively watching, to survive summary judgment on his Eighth Amendment claims against each officer present. *See* Section III. A. 2., above. Plaintiff alleged that he was screaming in pain, so, if he is

---

[20] The absence of the videotape of plaintiff's cell transfer further supports the conclusion that there are genuine issues of fact regarding what force, if any, the defendants applied to plaintiff. *See Cicio v. Lamora*, 2010 WL 1063875, at *7 (the absence of a videotape when DOCS policy requires taping of a cell extraction may support an inference that excessive force was applied).

believed on this point, it could be apparent to the officers in the vicinity that excessive force was being applied.  There is at least a genuine issue of fact as to whether any particular officer was in a reasonable position to intervene to stop the alleged abuse. *See Tafari v. McCarthy*, 2010 WL 2044705, at *28-29 (finding a genuine issue of fact with respect to a failure-to-intervene claim against officer who encouraged another officer as he yanked on plaintiff's handcuffs, causing plaintiff to smash his face into a steel door and crack a tooth).  Thus, this court will recommend that summary judgment be denied with respect to the Eighth Amendment claims against the five officers with respect to this incident.

Social Worker Amberman, however, stood in a different position than the correction officers.  Plaintiff acknowledged that defendant Amberman's office door was shut when the officers began to move him.  (Dep. at 98).  Assuming that plaintiff screamed in pain, as he claims, he had been yelling and complaining in the Social Worker's presence most of the day; so it would not necessarily have been apparent to her that excessive force was being applied to him.  The plaintiff admittedly threatened to kill himself because he was denied ointment for chapped lips, so the Social Worker would have been reasonably skeptical of further verbal complaints and yelling.  In any event, as a Social Worker in the infirmary, defendant Amberman would not have had the duty or authority to intervene in the efforts of correction officers to handcuff and move the plaintiff.  (Amberman Decl. ¶¶ 14-16 & Ex. B).  *See e.g., Rendely v. Town of Huntington*, No. 2:03-CV-3805, 2006 WL 5217083, at *6 (E.D.N.Y. Aug. 30, 2006)

(because defendants were civilian government employees, and thus not law enforcement officials, they had no authority or duty to prevent the police officers from taking plaintiff into custody); *Phoenix v. Reddish*, 175 F. Supp. 2d 215, 220 (D. Conn. 2001) (there is no Supreme Court or Second Circuit authority that imposes an affirmative duty on a non-police state actor to intervene to prevent a police officer from conducting an unlawful search and seizure). Because she clearly did not have a realistic opportunity to intervene and prevent any harm from occurring, defendant Amerman cannot be liable failing to intervene if, in fact, unlawful force was applied to plaintiff.[21] *Jean-Laurent v. Wilkinson*, 540 F. Supp. at 512. Accordingly, this court recommends that the Eighth Amendment claim against Social Worker Amberman be dismissed.

## IV.   **Deliberate Indifference to Medical Needs**

### A.   **Legal Standards**

In order to state an Eighth Amendment claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). There are two elements to the deliberate indifference standard. *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003). The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently

---

[21] Defendant Amberman denies witnessing any physical abuse of the plaintiff. (Amberman Decl. ¶¶ 15-16 & Ex. B)

20

culpable state of mind.  *Id.* at 184.

### 1.    Objective Element

In order to meet the objective requirement, the alleged deprivation of adequate medical care must be "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  Determining whether a deprivation is sufficiently serious also involves two inquiries.  *Id.*  The first question is whether the plaintiff was actually deprived of adequate medical care.  *Id.* Prison officials who act "reasonably" in response to the inmates health risk will not be found liable under the Eighth Amendment because the official's duty is only to provide "reasonable care." *Id.* (citing *Farmer*, 511 U.S. at 844-47).

The second part of the objective test asks whether the purported inadequacy in the medical care is "sufficiently serious." *Id.* at 280.  The court must examine how the care was inadequate and what harm the inadequacy caused or will likely cause the plaintiff.  *Id.*  If the "unreasonable care" consists of a failure to provide *any* treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003)).  However, in cases where the inadequacy is in the medical treatment that was actually afforded to the inmate, the inquiry is narrower.  *Id.*  If the plaintiff is receiving ongoing treatment, and the issue is an unreasonable delay or interruption of the treatment, then the "seriousness" inquiry focuses on the challenged delay itself, rather than on the underlying condition alone.  *Id.* (citing *Smith*, 316 F.3d at 185).  Thus, the court in

21

*Salahuddin* made clear that although courts speak of a "serious medical condition" as the basis for an Eighth Amendment claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to establish constitutional liability. *Id.* at 280.

2.    **Subjective Element**

The second element is subjective and asks whether the official acted with "a sufficiently culpable state of mind." *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 300 (1991)). In order to meet the second element, plaintiff must demonstrate more than a "negligent" failure to provide adequate medical care. *Id.* (citing *Farmer*, 511 U.S. at 835-37). Instead, plaintiff must show that the defendant was "deliberately indifferent" to that serious medical condition. *Id.* Deliberate indifference is equivalent to subjective recklessness. *Id.* (citing *Farmer*, 511 U.S. at 839-40).

In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety. *Id.* The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference. (citing *inter alia Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or non-existent." *Farmer*, 511 U.S. at 844. Thus, the court stated in *Salahuddin* that the defendant's

22

belief that his conduct posed no risk of serious harm "need not be sound so long as it is sincere," and "even if objectively unreasonable, a defendant's mental state may be nonculpable." *Salahuddin*, 467 F.3d at 281.

Additionally, a plaintiff's disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001). Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id.* (citations omitted). An inmate does not have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). The fact that plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id.*

Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment. *Sonds*, 151 F. Supp. 2d at 312 (citing *Estelle*, 429 U.S. at 107). Even if those medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate. *Id. See also Daniels v. Williams*, 474 U.S. 327, 332 (1986) (negligence not actionable under Section 1983). Thus, any claims of malpractice, or disagreement with treatment are not actionable under Section 1983.

**B.    Application**

Plaintiff claims that Nurse Ploof was deliberately indifferent to his serious

23

medical needs by failing to give him any treatment after the alleged "assault" on the morning December 19, 2005.  (AC ¶ 6B).  However, the relevant medical records corroborate that Nurse Ploof examined plaintiff and found no evidence of any injuries.  Because of his claim that he could not stand because of back pain, Nurse Ploof kept the plaintiff in the infirmary for observation and ordered x-rays, which were taken the next day.  (Ploof Decl. ¶¶ 7-10 & Ex.; Brown Decl. Exs. B, C, & D, Dkt. Nos. 110-6 at 10-13, 110-7, & 110-8 at 1-5).

Plaintiff's conclusory claim that Nurse Ploof completely refused to provide any medical attention on December 19, 2005 is insufficient to create an issue of fact, in the face of her sworn declaration and supporting documentary evidence in the record.  *See Benitez v. Pecenco*, 92 Civ. 7670, 1995 WL 444352, at n.5 (S.D.N.Y. July 27, 1995) (plaintiff's conclusory allegation that he was never issued medication was directly contradicted by medical records and was insufficient to create a factual dispute on that issue) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("mere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case")).[22]

In any event, plaintiff's medical records, including the subsequent x-rays,

---

[22] See also *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) ("While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' . . . and thus whether there are any 'genuine' issues of material fact, without making some assessment of the plaintiff's account." (citation omitted)).

24

demonstrated that he was not suffering from a serious medical condition which, even if completely ignored, would have created a serious risk to his health. Nor does plaintiff's subsequent medical history reveal that the brief delay in further medical treatment had any adverse impact on plaintiff.

Moreover, plaintiff provides no evidence to support his claim that Nurse Ploof recognized a serious risk to his health and deliberately ignored it. While plaintiff may have disagreed with Nurse Ploof's medical judgment as to his condition and the level of care he required, that would not support a claim of deliberate indifference to him medical needs. *See Sonds*, 151 F. Supp. 2d at 312 (disagreements over diagnostic techniques and forms of treatment implicate medical judgments and not the Eighth Amendment). In short, plaintiff has failed to provide any factual support for his conclusory claim that defendant Ploof was deliberately indifferent to a serious medical issue, and this court recommends dismissal.[23]

## V.   **Denial of Meals**

Plaintiff claims that he was deprived of due process when the defendants did not ensure that he received lunch and dinner on December 19, 2005. Such claims are typically based on the standards of the Eighth Amendment, and plaintiff's *pro se*

---

[23] Plaintiff claims that Nurse Ploof was deliberately indifferent to his medical needs because she left him in handcuffs and back-chains. As she notes in her declaration, Nurse Ploof was not in a position to countermand the security decisions of the correction officers with respect to the appropriate levels of restraint of the plaintiff. (Ploof Decl. at 13). Because she lacked the duty and authority to release plaintiff from his restraints, she cannot be deemed deliberately indifferent for failing to do so. See, e.g., *Phoenix v. Reddish*, 175 F. Supp. 2d at 220; *Rendely v. Town of Huntington*, 2006 WL 5217083, at *6, discussed in Section III. B. 2. above.

amended complaint will be construed accordingly.  *Robles v. Coughlin*, 725 F.2d 12, 15-16 (2d Cir. 1983).

When correction officials deny a prison inmate the measure of food necessary to maintain health, the Eighth Amendment's prohibition against cruel and unusual punishment is implicated.  *Id*.  "If, on the other hand, meals, are withheld from a prisoner on an isolated basis, such conduct, though not necessarily to be condoned, does not typically rise to a level of constitutional significance."  *Cruz v. Church*, 9:05-CV-1067 (GTS/DEP), 2008 WL 4891165, at *12 (N.D.N.Y. Nov. 10, 2008) (citations omitted).

If this case, plaintiff was not served lunch and dinner in the Upstate infirmary on a day in which he refused breakfast, made several threats to kill himself, was involved in at least one use-of-force incident, and otherwise endeavored mightily to disrupt the routine of the staff.  Plaintiff has adduced no evidence to support his conclusory allegations that any defendant deprived him of the meals purposefully, much less with deliberate indifference to his health and welfare.[24]  In any event, the failure to serve two meals on one day is a *de minimis* deprivation that does not rise to the level of a constitutional violation.  *See, e.g., Parker v. Peek-Co*, 9:06-CV-1268

---

[24] As noted above, only one of the defendants accused in the complaint of depriving plaintiff in this manner was at all responsible for serving meals to inmates in the infirmary.  The two officers assigned to the infirmary on December 19, 2005 both denied intentionally depriving plaintiff of his meals.  (Clark Decl. ¶¶ 18, 19; Jock Decl. ¶¶ 11, 12).  The other defendants who were not responsible for plaintiff's meals could not be liable for the fact that he was allegedly deprived of lunch and dinner.  *See, e.g., Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (personal involvement is a prerequisite to the assessment of damages in a section 1983 case); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).

(GLS/DEP), 2009 WL 211371, at *4 (N.D.N.Y. Jan. 27, 2009) ("While plaintiff alleges that he was deprived of two meals on that date as a result of the defendant's actions, such a deprivation, while not to be condoned, is *de minimis* and does not rise to a level of constitutional significance."); *Cagle v. Perry*, No. 9:04-CV-1151 (TJM/GHL), 2007 WL 3124806, at *14 (N.D.N.Y. Oct.24, 2007) (deprivation of two meals is "not sufficiently numerous, prolonged or severe to rise to the level of an Eighth Amendment violation.")

## VI.   Qualified Immunity

Defendants argue that they are entitled to qualified immunity with respect to all of plaintiff's claims.  Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  However, even if the constitutional privileges are clearly established, a government actor may still be shielded by qualified immunity "if it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir.1991) (citing *Magnotti v. Kuntz*, 918 F.2d 364, 367 (2d Cir.1990).

In determining whether qualified immunity applies, the court may first consider whether "the facts alleged show the [defendant's] conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201(2001), modified by *Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808, 811 (2009) (holding that, "while the sequence set forth

27

[in Saucier] is often appropriate, it should no longer be regarded as mandatory in all cases"). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. This court need not address qualified immunity with respect to plaintiff's claims against defendants Ploof and Amberman, or his claim relating to missed meals, because, as discussed above, he has not established those alleged violations of his constitutional rights.[25]

As to plaintiff's excessive force and failure to intervene claims against defendants M. Gokey, G. Ellsworth, B. Clark, Perry, B. Gale, D. Coorigeux, W. Jock, and Premo, it was clearly established, as of the time of the alleged incidents on December 19, 2005, that inmates had an Eighth Amendment right to be free from excessive force and a failure to intervene. *See, e.g., Hudson*, 503 U.S. at 9-10. Thus, accepting all of plaintiff's allegations about the two incidents on that day as true, qualified immunity cannot be granted to those defendants, because a reasonable person in their position at the time would or should have known that the use of excessive force was a constitutional violation. *See, e.g.*, *Dallio v. Sanatamore*, 2010 WL 125774, at *14.

---

[25] Even if the court had concluded that Social Worker Amberman or Nurse Ploof had committed constitutional violations by failing to intervene in the alleged misuse of handcuffs or other uses of force by the other defendants who were correction officers, they would be entitled to qualified immunity. *See, e.g., Phoenix v. Reddish*, 175 F. Supp. 2d at 220 (because there is no Supreme Court or Second Circuit authority that imposes an affirmative duty on a non-police state actor to prevent a police officer from conducting an unlawful search and seizure, the non-law enforcement employee has qualified immunity from a claim of failing to intervene).

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 110) be **GRANTED IN PART,** and that the complaint be dismissed (1) in its entirety as against defendants Ploof and Amberman; (2) to the extent it asserts claims for money damages against any defendant in his or her official capacity; and (3) to the extent it asserts claims relating to the denial of meals to plaintiff.  And, it is further

**RECOMMENDED**, that defendants' summary judgment motion be **DENIED IN PART**, as to (1) plaintiff's Eighth Amendment claims based on excessive force against defendants M. Gokey, G. Ellsworth, and B. Clark and (2) the Eighth Amendment claims based on excessive force and/or failure to intervene against defendants Perry, B. Gale, D. Coorigeux, W. Jock, and Premo.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**Dated: July 13, 2010**

Hon. Andrew T. Baxter
U.S. Magistrate Judge